MEEKER et al., Appellant, v. CITY OF MADISON, Respondent

(154 N. W. 648.)

(File No. 3817.   Opinion filed November 4, 1915.)

Contracts—Interpretation of—Municipal Corporations—Sewer Pipe Joints, Repair of, Costs of—Deviating from Specifications, Effect.

Where, under a contract between appellants and a city for constructing a sewer, the city withheld part of the consideration because of leakages in the joints of piping caused by internal pressure, and a supplementary contract was made permitting the city to repair said joints, if it could be done under the specifications of the original contract, the cost thereof to be deducted from the balance due, and if it could not be so done said balance to be paid appellants, held, that the city, in making the repairs, was bound by the specifications of the contract, requiring that the ends of the pipe shall be abutted against each other so that there shall be no shoulder or want of uniformity of service in the interior; that the pipes shall be joined by filling the sockets with mortar mixed as specified, and that "great care must be taken to make the joints as nearly water-tight as possible;" and, it appearing from the evidence that the joints could not be made tight by following the specifications, the city was not justified in not only filling the joints with mortar but in covering the joints with thick wide cement collars and with heavy wide bevels of cement, nor in resisting payment of said balance because said repairs cost more than

the amount due appellants; the city's contention that· it was authorized, by the specification above quoted, to go beyond the mere filling of the sockets with mortar, not being tenable; since one sentence of the specifications cannot be given undue importance to the exclusion of other parts thereof, but all parts of the instrument must be considered.

Appeal from Circuit Court, Lake County.  Hon. JOSEPH W. JONES, Judge.

Action by L. W. Meeker and another, copartners as Meeker & Dobson, against the city of Madison, to recover the balance due under a contract for constructing a sewer.  From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal.  Reversed and remanded for a new trial.

*Farmer & Blewitt,* for Appellants.

*C. J. Porter,* for Respondent.

Appellants submitted that:  The joints were to be made "as nearly water tight as possible" by "filling the sockets with mortar."

Respondents submitted that:  In the absence of restrictions as to the kind of joint to be used, it was the plaintiffs' right, and duty, to make the kind best answering the purpose and to "make the joints as nearly water tight as possible," and that it was defendant's privilege to do likewise in the reconstruction work.

GATES, J.  Appellants constructed a sanitary sewer system for respondent city.  The entire contract price was paid except the sum of $1,081, which the city withheld for the reason that the last 1,081 feet of 18-inch pipe nearest the disposal tank failed to withstand the internal pressure put upon it, and leaked at the joints.  Thereupon the parties entered into a supplemental contract, to the effect that the city would repair the joints of said 1,081 feet of pipe, and if it could so repair them in accordance with the provisions of the original specifications, the cost thereof should be deducted from said $1,081 and the residue turned over to appellants; if it could not so repair them in accordance with the specifications, the appellants should be paid said sum of $1,081. The city resisted payment of the $1,081, for which this action was brought, for the reason that the cost of the repairs exceeded said sum.  A jury trial was had, which resulted in a verdict for the city.  From the judgment and order denying a new trial, plaintiffs appeal.

It is claimed by appellants that in making such repairs the city went beyond the specifications and made cement collars and heavy cement bevels over the joints, instead of merely filling the sockets with cement, and that by following the specifications the leaks could not have been obviated. The latter claim is fully sustained by undisputed evidence, so that the only question before us is the proper interpretation of the specifications. The specifications provided (the italics being ours):

"VIII. Pipe Laying:—The ends of the pipe are to abut close against each other in such a manner that there shall be no shoulder or want of uniformity of surface on the interior of the drain. Pipes shall be joined by *filling the sockets* with mortar mixed in proportions and in a manner as specified below. Great care must be taken to make the joints as nearly water-tight as possible."

"XVIII. Mortar: The mortar used in joining the pipes, in laying brick work, in man holes and flush tanks will be composed of one part Portland cement, measured in the original package and one and one half parts of clean sharp sand."

There was a conflict in the testimony as to whether the mixture of sand and cement used by the city was as specified, or whether it consisted of one part of sand to one of cement. But as the jury has found for the city, that question does not become material upon this appeal.

It is the claim of the city that the sentence, "Great care must be taken to make the joints as nearly water-tight as possible," is all-controlling, and that it was authorized, in making such repairs, to do the things necessary to make the joints tight enough to sustain the internal pressure upon them. On the other hand, it is the contention of appellants that such sentence must be read in connection with the preceding sentence of the specifications, and each sentence given its due importance. We are of the opinion that appellants' interpretation is the correct one. It is elementary that all parts of an instrument must be considered in interpreting it. One sentence of the specifications cannot be picked out and given undue importance to the exclusion of other parts thereof. The interpretation claimed by the city and adopted by the trial court in its instructions to the jury entirely eliminated from the specifications the italicized words of specification VIII, which simply re-

quired that the sockets at the bell ends of the pipe should be filled with mortar. The proper interpretation of specification VIII is that great care must be taken to make the joints as nearly water-tight as it is possible to make them by filling the sockets with the proper motar. If the city could not make the joints tight by so doing, and it appears from the evidence that it could not, it was owing the plaintiffs the sum of $1,081. When the city not only filled the sockets with mortar, but covered the joints with thick and wide cement collars and with heavy and wide bevels of cement, it did more than it was authorized to do under the specifications.

The judgment and order appealed from are reversed, and the cause is remanded for a new trial.